CULLEN, Ch. J., EDWARD T. BARTLETT, VANN, WILLARD BARTLETT and HISCOCK, JJ., concur; WERNER, J., concurs in result.

Appeal dismissed.

---

THOMAS R. BALL, Appellant, *v.* BROADWAY BAZAAR, Respondent.

Appeal — when order of reversal assumed to be predicated solely upon questions of law — "trade marks" and "trade names" defined — principles of law and equity applicable thereto — judgment restraining use of trade name.

Where, on an appeal from an order reversing a judgment granted at Special Term in an equity action, the order of reversal is silent as to the grounds on which it is based, the facts must be taken as found, and the case examined upon the assumption that the Appellate Division predicated its reversal solely upon questions of law.

A trade mark may be defined to be any sign, mark, symbol, word or words which indicate the origin or ownership of an article as distinguished from its quality, and which others have not the equal right to employ for the same purpose. In its strictest sense it is applicable only to a vendible article of merchandise to which it is affixed. A trade name relates to a business and its good will rather than a vendible commodity.

The same fundamental principles of law and equity are applicable to both trade marks and trade names. In either case such unfair conduct as is

calculated to deceive the public into believing that the business of the wrongdoer is the business of him whose name, sign or mark is simulated or appropriated, constitutes the gist of the offense. Trade names are protected by the application of the same principles of equity that relate to technical trade marks.

The words "Lilliputian" and "Bazaar" are parts of our common speech, and neither of these words alone can be the subject of a trade name in which any one can acquire an exclusive proprietary right. They are descriptive parts of our language and may be used by all; but their use together or in combination with some other words marks the difference between what is permissible and what may be forbidden. *Held*, that upon the facts found by the trial court defendant was properly restrained from using the trade name "Broadway Bazaar, Brooklyn's Best Lilliputian Store," but judgment modified by striking therefrom the clause "and from using the word 'Lilliputian' either alone or in connection with any other words, and from so using any like words."

*Ball* v. *Broadway Bazaar*, 121 App. Div. 546, reversed.

(Argued February 19, 1909; decided March 2, 1909.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 18, 1907, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term, and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John W. Ingram* and *Frank E. Bradley* for appellant. This is both a trade-name and a trade-mark case. (Paul on Trade Marks, § 160; *Dewitt* v. *Mathew*, 18 Ky. L. R. 257; 35 S. W. Rep. 1113; *Hoyt* v. *Hoyt*, 143 Penn. St. 623; *Cady* v. *Schultz*, 19 R. I. 193; *Newman* v. *Alvord*, 51 N. Y. 189; Hopkinson on Trade Marks, § 11; *Koehler* v. *Sanders*, 122 N. Y. 65; *Howard* v. *Henriques*, 3 Sandf. 725; *Glen & H. Mfg. Co.* v. *Hall*, 61 N. Y. 226; *Canal Co.* v. *Clark*, 13 Wall. 311; *S. M. Co.* v. *Wilson*, L. R. [2 Ch. Div.] 434.) The plaintiff's designation "Best & Co. Lilliputian Bazaar" is susceptible of exclusive appropriation as a trade mark. (*Koehler* v. *Sanders*, 122 N. Y. 73; *Ball* v. *Best*, 135 Fed. Rep. 434; *H. D. W. Co.* v. *C. I. Co.*, 144 Fed. Rep. 39;

*Bailly* v. *N. M. Co.*, 10 N. Y. Supp. 224; *Vulcan* v. *Myers*, 139 N. Y. 364; *Rawlinson* v. *Brainard*, 28 Misc. Rep. 290; *Waterman* v. *Shipman*, 130 N. Y. 301; *Selchow* v. *Baker*, 93 N. Y. 59; *Keasby* v. *B. C. Works*, 142 N. Y. 467.) The name used by defendant so resembled plaintiff's trade name and trade mark as to be calculated to deceive, and was adopted for that purpose by defendant. (*Cady* v. *Schultz*, 19 R. I. 193; *Ball* v. *Best*, 135 Fed. Rep. 434; *Menendez* v. *Holt*, 128 U. S. 514; *Hier* v. *Abraham*, 82 N. Y. 519; *Newman* v. *Alvord*, 51 N. Y. 189; *Vulcan* v. *Myers*, 139 N. Y. 364; *Dunlop* v. *Young*, 68 App. Div. 137; *Pillsbury* v. *F. M. Co.*, 64 Fed. Rep. 841; *Swift* v. *Dey*, 4 Robt. 611; *Fisher* v. *Blank*, 138 N. Y. 248.)

*Herman N. Hanson* for respondent. This is not a trademark case, but a trade-name case. (Paul on Trade Marks, § 177; Brown on Trade Marks, § 91; *Ball* v. *Broadway Bazaar*, 121 App. Div. 546; *C. A. Assn.* v. *Haynes*, 26 App. Div. 279.) The plaintiff has failed to establish that the words in question herein can be legally appropriated as a trade mark, and that he has an exclusive proprietary right to the use thereof; and the trial court's finding to the contrary was error. (*Koehler* v. *Sanders*, 122 N. Y. 173; *Caswell* v. *Davis*, 58 N. Y. 223; *Cooke & Cobb Co.* v. *Miller*, 169 N. Y. 475; *B. C. Co.* v. *Stern*, 176 N. Y. 27; *Rawlinson* v. *Brainard*, 28 Misc. Rep. 290; *H. W. I. Co.* v. *N. Y. H. I. Co.*, 140 N. Y. 94; *C. A. Assn.* v. *Haynes*, 26 App. Div. 279; Sebastian on Trade Marks [2d ed.], 245.) Even assuming that plaintiff possessed this exclusive right, he must show that the similarity of the two trade names is so great that a person using reasonable care could or would be deceived by it. This plaintiff failed to show. (*Dunlap* v. *Young*, 68 App. Div. 137; *Vulcan* v. *Myers*, 139 N. Y. 364; *C. Adv. Assn.* v. *Haynes*, 26 App. Div. 283; *Koehler* v. *Sanders*, 122 N. Y. 72; Upton on Trade Marks, 136; *Popham* v. *Cole*, 66 N. Y. 69; *Hier* v. *Abrahams*, 82 N. Y. 519.) Even assuming the existence of the infringement alleged, the judgment entered

herein is too broad and comprehensive in its scope, and some of its provisions are not authorized by the pleadings, proofs and findings. (*Fischer* v. *Blank*, 138 N. Y. 248.)

WERNER, J.   At the Special Term a judgment was entered restraining the defendant from using certain designations in advertising and describing its business, which were held to be an infringement of a trade name to which the plaintiff had established an exclusive proprietary right.   Upon appeal to. the Appellate Division that judgment was reversed and a new trial granted.   From the order of reversal the plaintiff appeals to this court, giving the usual stipulation for judgment absolute in the event of affirmance.   Since the order of reversal is silent as to the grounds upon which it is based, we must take the facts as found by the trial court and examine the case upon the assumption that the Appellate Division predicated its reversal solely upon questions of law.   (Code Civ. Pro. sec. 1338.)   It is necessary, therefore, to look to the findings of the trial court to ascertain what facts were deemed to have been established by the evidence.

At the time of the trial the plaintiff was, and for many years prior thereto had been, engaged in the manufacture and sale of infants', children's and youth's garments, clothing and supplies, under the trade name of " Best & Co. Lilliputian Bazaar," at Nos. 60–62 West 23rd street in the borough of Manhattan in the city of New York.   More than eighteen years before the trial a partnership had been formed by one Best and another for the conduct of that business.   The plaintiff subsequently became a member of that firm and later its sole survivor.   Throughout all these changes in proprietorship the business was conducted under the same trade name.   At the inception of the business, and as a means of advertising it, the proprietors adopted a device consisting of a large hand and small human figures accompanied by the words " Lilliputian Bazaar."   The building in which the business has been carried on bears a sign containing the legend, " Best & Co., Lilliputian Bazaar."   This designation has been

extensively advertised in catalogues, magazines, newspapers and other descriptive literature at great expense, until it has become identified in the minds of the public with the plaintiff's business and the merchandise in which he trades. By these means the plaintiff has established, under that trade name and designation, a large and valuable business throughout the United States.

The defendant, a domestic corporation, is also engaged in the sale of children's clothing and supplies at 1185 Broadway in the borough of Brooklyn, in the city of New York, and in various ways advertises itself as the "Broadway Bazaar, Brooklyn's Best Lilliputian Store." This designation is coupled with a characteristic sign representing a large flying stork bestridden by a nude infant. This business, thus advertised, had been carried on by the defendant for a number of months prior to the commencement of this action, and when the plaintiff acquired knowledge of the fact he notified the defendant that it was infringing his trade name and requested that it desist, but without result.

In addition to the foregoing facts, which we have epitomized from the decision, the trial court specifically found " That defendant's use of the said name, 'Broadway Bazaar, Brooklyn's Best Lilliputian Store,' is calculated to deceive the public and induce the belief among customers that the defendant's business is connected with plaintiff's, and that the goods sold by the defendant are goods manufactured by the plaintiff, or sold in connection with the plaintiff's business." "That defendant in adopting and maintaining and using said name of 'Broadway Bazaar, Brooklyn's Best Lilliputian Store,' did so with intent to deceive the public in the manner indicated in the eighth (preceding) finding of fact, and for the purpose of competing unfairly with the plaintiff in the business hereinbefore formed." "That the plaintiff has established and acquired an exclusive proprietary right as a trade name and as a trade mark in the words 'Best & Co., Lilliputian Bazaar.'" Upon these findings of fact the learned trial court based the legal conclusion that the plaintiff was entitled to a

permanent injunction restraining the defendant from the con-
tinuance of the infringement. That conclusion seems to be
clearly authorized by the facts, unless there is merit in the
point upon which the learned Appellate Division reversed the
judgment. The learned justice who wrote for that court
remarked that "this is not a trade mark case, but a trade
name case," and from that postulate he proceeded to the con-
clusion that the plaintiff was entitled to no relief. If the
order of reversal, which was entered pursuant to that conclu-
sion, had set aside the judgment upon the facts as well as the
law, we would be powerless to disturb it; and, conversely, as
the reversal is purely upon questions of law, we cannot sustain
it unless the legal conclusion adopted by the learned trial jus-
tice is without support in the facts found. In considering the
case from that point of view, we think it is immaterial whether
this case is regarded as involving the defendant's unjustifiable
use of the plaintiff's trade name or trade mark, or both. The
distinction between a trade name and a trade mark, which is
emphasized in the opinion of the learned Appellate Division,
is one that is clearly recognized by the text writers and in the
decisions, but that is not sufficient to dispose of the case at bar.
Although the complaint was framed and the case was tried
upon the theory that both the plaintiff's trade name and trade
mark had been infringed by the defendant, the evidence and
the findings establish the defendant's infringement simply of
the plaintiff's trade name as distinguished from his alleged
trade mark; and that infringement is all that the judgment is
designed to prevent.

For the purpose of getting a correct view of the question
upon which the order of reversal seems to be based, it may
be well to state as concisely as possible the distinction between
a technical trade mark and a trade name. A trade mark may
be tersely defined to be any sign, mark, symbol, word or
words, which indicate the origin or ownership of an article as
distinguished from its quality, and which others have not the
equal right to employ for the same purpose. In its strictest
sense it is applicable only to a vendible article of merchandise

to which it is affixed.   A trade name relates to a business and
its good will rather than a vendible commodity.   (Brown on
Trade Marks, sec. 91; Sebastian's Law of Trade Marks, p. 16.)
There are doubtless many instances in which the same signs,
marks, symbols, etc., may serve both as trade marks and trade
names.   It may be that the designations used by the plaintiff
fall within this class, for it appears that some of his mer-
chandise is labeled with his distinguishing marks.   As this
record stands, that feature is not of controlling importance
because there is no finding that the defendant labels or marks
its goods, and, indeed, there is uncontradicted evidence to
the contrary.   The case is one, therefore, involving the
defendant's infringement of plaintiff's trade name as distin-
guished from his trade mark, and, considering it in that
aspect, the ultimate question is whether the findings of fact
entitle the plaintiff to the judgment which the trial court
rendered, or to any judgment whatever.   Although we agree
with the learned Appellate Division in recognizing the tech-
nical distinction between trade marks and trade names, we
think the same fundamental principles of law and equity are
applicable to both.   " All such cases, whether of trade mark
or trade name, or other unfair use of another's reputation,
are concerned with an injurious attack upon the good will of
a rival business; customers are diverted from one trader to
another, and orders intended for one find their way to the
other."   (Sebastian on the Law of Trade Marks, p. 17.)
Trade marks and trade names are in reality analogous to the
good will of the business to which they appertain.   The trade
mark represents it in the market and the trade name proclaims
it to those who pass the shop.   In either case such unfair
conduct as is calculated to deceive the public into believing
that the business of the wrongdoer is the business of him
whose name, sign or mark is simulated or appropriated, con-
stitutes the gist of the offense.   It may be conceded that
there may be a difference in the extent of the territory
to which the remedy can or should be applied.   There are
many trade names which are so essentially associated with

or applicable to a particular locality that their use in other places cannot deceive or mislead, and for that reason they may not be interdicted. But there other instances in which a trade name and its infringement may be co-extensive with the trade, and when that is so, there seems to be no valid reason why the remedy should be less far-reaching than the wrong. That is also a distinction of no great moment in the case at bar, because both parties carry on their business in and from the same city. They are in different boroughs, it is true, but near enough to each other to support the conclusion that the defendant's conduct " is calculated to deceive the public and induce the belief among customers that the defendant's business is connected with the plaintiff's and that the goods sold by the defendant are manufactured by the plaintiff or sold in connection with plaintiff's business." These facts bring the case fairly within the rule that trade names are protected by the application of the same principles of equity that relate to technical trade marks. (*Howard* v. *Henriques*, 3 Sandf. [S. C.] 725 ; *Glen & H. Mfg. Co.* v. *Hall*, 61 N. Y. 226 ; Paul on Trade Marks, sec. 182; and other authorities.)

The judgment is, however, somewhat broader than it should be. It is quite within bounds in restraining the use of " Best " and " Lilliputian " and " Bazaar " in connection with each other. It seems to be proper, also, in so far as it prohibits the use of " Lilliputian Bazaar " either alone or in connection with the word " Best." But it goes further and forbids the use of the word " Lilliputian " either alone " or in connection with any other words, and from so using any like words." The word " Lilliputian " is derived from Swift's Travels of Lemuel Gulliver to the imaginary Kingdom of Lilliput, the inhabitants of which were described as pygmies about six inches in height. Although of purely fanciful origin, the word " Lilliputian " has become a part of the English language and is used to denote persons, and possibly things, of diminutive or minute size. The word " Bazaar " is also a part of our common speech. It is somewhat indiscriminately applied to

shops, either singly or in groups, where goods are displayed for sale, to fairs or sales for the benefit of churches ·or charities, and to other places fitted up for the sale of goods. It is obvious that neither of these words alone can be the subject of a trade name in which any one can acquire an exclusive proprietary right. They are purely descriptive parts of our language and may be used by all. But their use together, or in combination with some other word, such as "Best," for instance, marks the difference between what is permissible and what may be forbidden.

The order of the Appellate Division should be reversed and the judgment of Special Term should, therefore, be modified by striking therefrom the clause "and from using the word 'Lilliputian' either alone or in connection with any other words, and from so using any like words," and as thus modified affirmed, with costs in this court.

CULLEN, Ch. J.; EDWARD T. BARTLETT, HAIGHT, VANN, WILLARD BARTLETT and HISCOCK, JJ., concur.

Ordered accordingly.