UNITED STATES FRAME & PICTURE CO. v. HOROWITZ.

(Supreme Court, Appellate Division, First Department. June 10, 1910.)

Appeal from Special Term, New York County.

Action by the United States Frame & Picture Company against Charles S. Horowitz. From a judgment of the Supreme Court, Special Term (51 Misc. Rep. 101, 100 N. Y. Supp. 705), plaintiff appeals.. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Charles Goldzier, for appellant.

Nathan Burkan, for respondent.

PER CURIAM.   Judgment affirmed, with costs.

INGRAHAM, P. J. (dissenting).   The Special Term, upon the trial of this case, found the following facts:   One Adolph Horowitz, many years prior to 1902, established a business of manufacturing and dealing in picture frames, pictures, and like goods in the city of New York, and for seven years prior to the commencement of this action had been carrying on business at No. 3 Barclay street, in the city of New York; that the defendant, the brother of Adolph Horowitz, came from Washington to New York when about 16 years of age, and entered into Adolph's employ in this picture frame business, and continuously remained until the incorporation of the plaintiff; that this business was conducted under the name of "United States Frame & Picture Company"; that plaintiff was incorporated to take over the business thus established by Adolph Horowitz; that the defendant, who took part in this incorporation of the plaintiff, was an incorporator, stockholder, and treasurer of the corporation; that shortly after the incorporation of the plaintiff Adolph Horowitz allowed the defendant to purchase some of his stock in the corporation, during the summer of 1903 dissension as to the management of the company between Adolph and the defendant arose, and the agreement under which the defendant was to acquire an interest in the stock was abrogated, and the powers of the defendant as treasurer of the company were curtailed.   About six months later new dissensions arose, and the defendant requested Adolph to purchase his stock, as a result of which Adolph purchased the stock, and the defendant resigned as director and treasurer of the corporation.   After this resignation the defendant requested the plaintiff to re-employ him; the result being that the plaintiff employed the defendant as a clerk.   That continued for about four weeks, when the defendant was discharged.   Two days after the defendant left the employ of the plaintiff, on March 24, 1904, he leased the premises, 86–88 Fulton street, which was in close proximity to the premises that had been occupied by the plaintiff for upwards of seven years, and established there a business of the same character as that in which the plaintiff was engaged under the name of the New York Frame & Picture Company, and filed with the county clerk, pursuant to section 363b of the Penal Code, a certificate that he was doing business at 86–88 Fulton street under the style of the New York Frame & Picture Company. Defendant then procured from the printer who had printed the plaintiff's stationery advertising cards and stationery so similar as to heading and marginal matter to the advertising cards and stationery of the plaintiff as to be a deceptive imitation of the same; issued cards and letters to many persons, including customers of the plaintiff, stating, "We have now moved to Nos. 86–88 Fulton street, and we are now located at the above address," referring to "our long experience" and "our new place," which notices were so ambiguous in phraseology as to lead the unwary to believe that reference was made to the plaintiff,

and printed envelopes and bill heads closely similar to that of the plaintiff. The defendant also sent out circulars on letter heads which were deceptive imitations of the plaintiff's letter heads, to plaintiff's customers, stating, "We wish to inform you that we are now located at the above address"; that "We wish to inform you that we are now located at our new building, Nos. 86–88 Fulton street," referring to "our long past experience."

From these findings it necessarily followed that the defendant, after selling out his interest in the plaintiff corporation, with which he had been engaged in business for so many years, had attempted to institute a new business under circumstances which indicated a fraudulent attempt, by the adoption of the name used in the business and the advertisements and circulars, and other devices adopted, to induce the public to believe that the business theretofore carried on by the plaintiff in Barclay street had been removed to the new store in Fulton street, and that the business there removed was the same business that had been before carried on in the Barclay street store. The adoption by the plaintiff of a name simulating that of the plaintiff corporation, only substituting the words "New York" for "United States," with the other means employed, was a fraud upon the plaintiff and the public, and by it the defendant succeeded in appropriating to himself a portion of the business of the plaintiff. The court, upon these facts, quite properly enjoined the defendant from continuing these advertisements, and from continuing to use the deceptive circulars and stationery, but refused to enjoin the defendant from using the name New York Frame & Picture Company.

I do not see why the adoption of this name was not improper, when it was used, as it was, in connection with the other fraudulent acts of the defendant in its endeavor to appropriate the plaintiff's business, and to deceive the plaintiff's customers and the public into the belief that it was the plaintiff's business that was being carried on by the defendant in the new store. The defendant, after selling out his interest in the plaintiff's corporation, started a business which competed with that carried on by the plaintiff, and deliberately entered into a scheme to appropriate the plaintiff's business and induce the public to believe that he was conducting the business which the plaintiff established. The adoption of the name under which his business was carried on which so closely simulated that under which the plaintiff had carried on its business was an essential element in the fraud. If the plaintiff had started a business under his own name, there could have been no deception. We may assume that the plaintiff could not obtain a trade-mark in the words "Frame & Picture Company," as that applied to all business of a similar character. When it adopted the name "United States Frame & Picture Company," it acquired no trade-mark; but it had a right to carry on a business under the name adopted by it, and no other competitor had a right to use the name thus adopted so as to deceive the plaintiff's customers and the public into the belief that it was the plaintiff's business that was being carried on by the defendant. It is a question of unfair competition and a dishonest attempt to deceive the public and the plaintiff's customers, and thus defraud the plaintiff, which is the basis of a right of a court of equity to interfere.

The court has found that the defendant was guilty of making such an attempt, and it has enjoined the defendant from continuing the use of the devices to carry this fraud ito effect. It is not a use of the name "Frame & Picture Company," disconnected with the other acts, which clearly showed the intent of the defendant, that the court is asked to enjoin; but it was asked to prevent the defendant from continuing his course of conduct which was clearly fraudulent and illegal. As was stated by the Court of Appeals in Ball v. Broadway Bazaar, 194 N. Y. 429, 87 N. E. 674:

"Trade-marks and trade-names are in reality analogous to the good will of the business to which they appertain. The trade-mark represents it in the market and the trade-name proclaims it to those who pass the shop. In either case such unfair conduct as is calculated to deceive the public into believing that the business of the wrongdoer is the business of him whose name, sign, or mark simulated or appropriated constitutes the gist of the offense. * * * But there are other instances in which a trade-name and its infringement may be coextensive with the trade, and when that is so there seems to be no valid reason why the remedy should be less far-reaching than the wrong."

Thus the gist of the offense of which the defendant was guilty was the adoption of the name and the use and methods by which it sought to deceive the public into the belief that the business of the wrongdoer was the business of the plaintiff. It seems to me that it was the duty of the court to enjoin the defendant from continuing the acts which he had adopted, and which was clearly intended to simulate the name of the plaintiff, under which he had attempted to steal the plaintiff's business. Where it is clearly established that the defendant has been thus guilty of a wrong, and has adopted various means to carry that wrong into successful operation by a series of acts, all of which are necessary to accomplish the illegal act, I think all of the acts should be condemned which were essential to the fraud or wrong, although one of such acts adopted for that purpose, if standing alone, would not have justified an injunction.

I think, therefore, the judgment should be modified, by enjoining the defendant from using this particular name thus adopted, as well as enjoining the defendant from committing the other acts which he had used in connection with this fraudulent name to defraud the plaintiff.