In the Matter of the Application of THE BARBER COMPANY, INC., Petitioner, for an Order of Certiorari against THE DEPARTMENT OF STATE OF THE STATE OF NEW YORK, and Hon. EDWARD J. FLYNN, as Secretary of State of the State of New York, Respondents. BARBER & CO., INC., Intervening Respondent.

Third Department, July 2, 1937.

*Chadbourne, Wallace, Parke & Whiteside [P. C. Dugan* and *Ralph D. Ray* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General [Henry Epstein, Solicitor-General, Joseph M. Mesnig,* and *F. R. Chant, Assistant Attorneys-General,* of counsel], for the respondents.

*Herman Goldman [Elkan Turk* and *Milton J. Levitt* of counsel], for the intervening respondent.

HILL, P. J. Petitioner, The Barber Company, Inc., a New Jersey corporation, has obtained an order of certiorari to review the proceedings which resulted in a decision made under section 212 of the General Corporation Law, by the Secretary of State refusing to issue to petitioner, on its original application, a certificate of authority to do business in this State. Barber & Company, Inc., a domestic corporation, petitions this court to be permitted to intervene herein. The Secretary of State declined to issue the certificate to petitioner " on the ground that the name so closely resembles that of Barber & Co., Inc., the certificate of incorporation of which was filed on the 25th day of September, 1936, as to be calculated to deceive." The refusal is substantially in the language of the statute (General Corp. Law, § 9). Voluminous historical data as to the petitioner and intervenor is included in the return. While the certificate of incorporation of each of these corporations

contains the usual omnibus clause that permits each to engage in similar enterprises, they are not competitors. Petitioner deals in asphalt and petroleum products and for many years has been engaged in supplying material for paving, road building, water proofing and roofing. It appears from affidavits filed by intervenor that prior to 1934 it was a holding company of subsidiary corporations engaged in shipping and allied industries like stevedoring, ship repairing and the operation of docks and terminals.

Petitioner, under the name " General Asphalt Company," was incorporated in New Jersey on May 19, 1903. Shortly thereafter it became the owner of the entire capital stock of The Barber Asphalt Company, a West Virginia Corporation. Petitioner's change of name became effective in New Jersey October 26, 1936. The Barber Asphalt Company, for many years prior to 1903 and at all times since, has been authorized to transact and has transacted business in this State and has maintained offices and warehouses here. Coincident with the change of name of the petitioner, the subsidiary Barber Asphalt Company was dissolved and petitioner, the parent corporation, took over its assets and business. Preparatory thereto and on July 13, 1936, counsel residing in Philadelphia wrote the New York Secretary of State: " It is proposed early in the fall to liquidate The Barber Asphalt Company by transferring all its assets to General Asphalt Company, the name of which Company will be changed to " The Barber Company." Contemporaneously with the liquidation we will wish to register " The Barber Company " in New York and now write to ask whether this name will be available. As you will note from the above, there will be no objection on the part of The Barber Asphalt Company."

Two days later the official replied: " This office is in receipt of your favor of the 13th inst. The name THE BARBER COMPANY, INC., will be available on the dissolution of THE BARBER ASPHALT COMPANY.

" As to the use of the abbreviation " Inc." see Section 9 of the General Corporation Law."

This was followed on July 28, 1936, by a letter from petitioner's attorney advising that the abbreviation " Inc." would be added to the proposed new name, and therein inquiry was again made " whether the corrected name is available for use in your State; if so, please reserve it for us." And on July 31, 1936, the official replied:

" This office is in receipt of your favor of the 28th inst. The name THE BARBER COMPANY, INC., will be available on dissolution of BARBER ASPHALT COMPANY.

" The law does not give the Secretary of State any authority to reserve names for prospective corporations.

" When presenting certificate under above name for filing kindly *enclose this letter.*"

The foregoing correspondence was doubtless intended by petitioner to be a compliance with section 215 of the General Corporation Law whereunder a foreign corporation holding a certificate to do business within the State and whose name is about to be changed, may obtain " not more than forty days before such change of name " a certificate from the Secretary of State that the name which such corporation proposes to assume is pre-empted for that period if it is not the name of any other corporation or so similar as to tend to deceive. Petitioner did not comply with the statute in several particulars. The Barber Asphalt Company (the West Virginia corporation) for many years has been authorized to do business within the State, but petitioner, the parent corporation whose name was to be changed, did not obtain a certificate until October sixteenth, and after the attempt to pre-empt the name. Also more than forty days elapsed as the notice to stockholders advising of the proposed change was not sent out until September eighteenth, and the change of name was not effected until October twenty-sixth. Thus the matter under review involves a new application (General Corp. Law, § 9) made by a corporation whose former certificate is deemed to be surrendered. (General Corp. Law, § 215.) However, the correspondence may have a bearing if equities may be considered in this proceeding at law, as it indicates an attempt, prior to the incorporation of the intervenor, to use the name " Barber " which had been used for many years by its wholly owned subsidiary and was valuable in connection with the sale of asphalt and its derivatives and products. It is asserted on behalf of the intervenor Barber & Co., Inc., that through the continuing interest of the Barber family, it is a successor to a New Jersey Corporation incorporated on September 9, 1902, under the name " Barber & Co., Incorporated," which being dissolved on September 1, 1917, was in turn followed at about the same time by " Barber & Co., Inc." formed under the corporate laws of the State of New York. The New York corporation was dissolved on December 21, 1934, from which time to the present, the record does not indicate activities of any kind by the intervening " Barbers." Details at length are given as to an active past by the Barber family as a partnership or incorporated, but the record is silent as to activities after the dissolution in 1934. The intervenor's petition says " that since the year 1917 there have been various reorganizations and corporate rearrangements of the Barber enterprise." It fails to state that any corporation

was in existence or that any partnership or individual was functioning under the Barber name after the dissolution in 1934 until the new corporation was formed after publicity had been given to the proposed change of name by the General Asphalt Company

Petitioner is permitted to do business in its home State of New Jersey under its new name, and it is stated that it has permission to do business under that name in every State of the Union except New York, and that the inhibition here involves substantial loss.

Section 9 of the General Corporation Law prohibits the issuing of a certificate authorizing a corporation to do business within this State if it has the same name as a domestic corporation " or a name so nearly resembling it as to be calculated to deceive." Under the law a corporate name is not akin to a family heraldic escutcheon; its ancestry is not of blood but of business. The same rules of law apply to a corporate name in so far as it is identified with the product sold or the service rendered, a trade name developed by usage and a registered trade-mark or name. (*American Steel Foundries* v. *Robertson*, 269 U. S. 372; *Ball* v. *Broadway Bazaar*, 194 N. Y. 429). " Brown's Iron Bitters " prepared by another Brown under a different formula than " Brown's Iron Tonic," and sold in good faith in dissimilar bottles with wrappers and labels bearing no resemblance, the advertisements indicating that the " bitters " occupied a different medicinal field than the " tonic," does not tend to deceive. (*Brown Chemical Co.* v. *Meyer*, 139 U. S. 540.) The Lorillard Company was permitted to use the word " Beech-Nut " in connection with its chewing tobacco. It was said by the late Justice HOLMES: " The Lorillard Company is at least as well known to those who do not despise tobacco as the Beech-Nut Company is to its refined customers." (*Beech-Nut Packing Co.* v. *Lorillard Co.*, 273 U. S. 629, 633.) " Barber " is a name more closely identified with asphalt and paving than intervenor is with shipping. Petitioner's name, " The Barber Co., Inc.," is not the same as intervenor's, " Barber & Co., Inc." Is the similarity, in view of the divergent activities of the parties, so close " as to be calculated to deceive?" A corporation engaged in the paving and roofing business would not obtain an advantage by appropriating the name of a corporation whose predecessor, many years earlier, was engaged in the shipping business. Petitioner shows as clear a right by use and origin to the name " Barber " as intervenor. The parties are not competitors, for while petitioner owns a limited number of tank steamers used to transport asphalt from Trinidad for its own use, there is no claim that it is engaged in commercial transportation by water. Intervenor argues that investors reading the stock market quotations (petitioner's stock is listed under the Barber name on one or more of the exchanges)

might mistake the asphalt stock for that of the former shipping company. This danger is not imminent, and the argument seems to have no basis of fact, as intervenor's stock is not listed on the exchange nor issued, so far as the record shows.

Intervenor's claimed predecessor was incorporated in New Jersey and the corporation was there dissolved in 1934. That State has permitted petitioner to take the Barber name. There may be no relation between petitioner's proceeding to change its name and the sudden resurrection and reincarnation of intervenor's corporate life under the old name, but the timing was so accurate, the purpose and reason given for the resurrection of the former shipping company so hidden and the attendant interference with petitioner's business so costly, that at least a doubt arises in my mind as to the good faith of the intervenor.

It is stated in the opinion in *People ex rel. Columbia Chemical Co.* v. *O'Brien* (101 App. Div. 296, 298):

" In a case where the Secretary of State improperly determines that the name of a proposed corporation as stated in a certificate of incorporation presented to him for filing and record is the same as the name of an existing corporation, or that it so nearly resembles such name as to be calculated to deceive, and he refuses to file and record such proposed certificate, there may be no adequate remedy to the persons or corporations claiming to be aggrieved other than by a review of such determination by a writ of certiorari.   *   *   *

" Where a certificate is filed with the same name as that of an existing corporation, or where the name so nearly resembles that of the existing corporation as to be calculated to deceive, the action of the Secretary of State is not conclusive and the courts have frequently by a judgment in equity granted relief to a prior corporation aggrieved.  (10 Cyc. 153; 7 Am. & Eng. Ency. of Law [2d ed.], 689; *Society of 1812* v. *Society of 1812*, 46 App. Div. 568; *Hygeia Water Ice Co.* v. *N. Y. Hygeia Ice Co.*, 140 N. Y. 94; *Higgins Co.* v. *Higgins Soap Co.*, 144 id. 462.)"

Later authorities may be added to the citations mentioned by Judge CHASE above to sustain the doctrine that equity will grant relief to a corporation aggrieved by an encroaching competitor. (*People ex rel. U. S. Grand Lodge* v. *Payn*, 161 N. Y. 229; *B. P. O. Elks* v. *Improved B. P. O. Elks*, 205 id. 459; *Corning Glass Works* v. *Corning Cut Glass Co.*, 197 id. 173; *Eastern Construction Co.* v. *Eastern Engineering Corp.*, 246 id. 459; *Material Men's Mercantile Assn., Ltd.,* v. *New York Material Men's Mercantile Assn., Inc.*, 169 App. Div. 843; affd., 224 N. Y. 670.)

I feel that the equities are with petitioner, but the Legislature has not empowered the courts to grant equitable relief upon a

review under an order of certiorari. (Civ. Prac. Act, § 1304.) There is an ancient authority indicating that petitioner, if its writ be dismissed, might still have recourse to equity. (*People* v. *Stilwell*, 19 N. Y. 531.) This suggestion, however, is not in harmony with the many authorities denying equitable relief where a remedy at law is provided. (*People ex rel. Columbia Chemical Co.* v. *O'Brien*, *supra*.) Upon the other hand, it is unquestioned that should the Secretary of State accept petitioner's application and grant a certificate, his determination would not be conclusive nor prevent intervenor from seeking a remedy if petitioner encroached. (*Pansy Waist Co., Inc.*, v. *Pansy Dress Co., Inc.*, 203 App. Div. 585.) Little would be accomplished on this review if the determination was annulled and the matter remitted under subdivision 5 of section 1304 of the Civil Practice Act.

I favor an annulment under subdivision 4 of that section under the finding that petitioner's new name does not so closely resemble intervenor's name " as to be calculated to deceive " and that there was no competent proof to sustain such finding, leaving intervenor to its recourse in equity if petitioner's use of the name tends to damage it or to confuse the public to its detriment. The application to intervene should be granted.

McNAMEE, CRAPSER and HEFFERNAN, JJ., concur; BLISS, J., dissents, with an opinion.

BLISS, J. (dissenting). I respectfully dissent from the opinion for annulment and vote to affirm the determination under review and to dismiss the petition.

It is apparent to the most unobserving that the names " The Barber Co., Inc.," and " Barber & Co., Inc.," would, to the ordinary person, represent one and the same corporation and it would be almost impossible to distinguish the two corporations by name alone. There is, therefore, a direct conflict of names and a confusion of identity would result. Added to this is the fact that the powers of these two corporations overlap. Each is authorized to engage in transportation by water, engage in manufacturing, own patents and inventions and own securities of other corporations. It is hard to conceive how there could be a greater duplication of names and lines of business. Clearly, all but the most meticulous would be apt to be deceived by these conflicts. Also, while perhaps not as strong from a purely financial standpoint, the record shows that the name Barber & Co., Inc., has long borne an honorable and favorable reputation in the shipping world and that this reputation gives to the name considerable value in that line. The majority opinion intimates that perhaps the intervenor was stirred into activity by the publication of the fact that the

petitioner was about to change its corporate name. The supplemental affidavit filed in behalf of the intervenor clearly shows that the reason for the formation of the new corporation had no connection with the activities of the petitioner, but that such corporation was formed solely because of a new act of Congress which made such action highly advisable. Even if the intervenor was diligent in the protection of a name which had become valuable through a long and honorable business career, it should not now be penalized for such diligence. There is also the added fact that under section 215 of the General Corporations Law the petitioner might have pre-empted the name which it desired to adopt for a period sufficiently long to enable it to make the necessary change, but by its own delays failed to make such change within the statutory period, so that any equities which might have arisen by reason of its correspondence with the respondent Secretary of State vanished through its own neglect. It is clear to me that there is a direct conflict of both names and corporate powers and that the name of petitioner would be calculated to deceive. There are no equities which merit an annulment of the determination of the Secretary of State even if we have the right so to do in the face of such conflicts.

Application to have intervening respondent's petition made part of record granted.

Determination annulled, with fifty dollars costs and disbursements.