## BEST & CO., Inc., v. MILLER.

District Court, S. D. New York.

Aug. 1, 1946.

Strauss, Reich & Boyer, of New York City (Nims, Verdi & Martin, Minturn de S. Verdi, Wallace H. Martin, and Walter J. Halliday, all of New York City, of counsel), for plaintiff.

Levien, Singer & Neuburger, of New York City (Stuart H. Steinbrink, of New York City, of counsel), for defendant.

COXE, District Judge.

This is a suit (1) for infringement of the plaintiff's registered trademark "Liliputian Bazaar," and (2) for unfair competition. The trademark was registered in 1915 under the Trade-Mark Act of 1905, 15 U.S.C.A. § 85 for children's clothing, and the registration was renewed in 1935. The parties are both New York citizens, and jurisdiction rests initially on federal registry.

The defendant operates a small store at Stamford, Connecticut, under the name "Miller's Lilliputian Shoppe," at which children's clothing is sold at retail under the label "Miller's Lilliputian Shoppe." The relief sought by the plaintiff is an injunction against the use by the defendant of the words "Lilliputian Shoppe," together with an accounting of profits and the recovery of damages.

The plaintiff and its predecessors have, since 1879, been continuously engaged in business in the City of New York in the sale at retail of infants' and children's apparel. From 1879 to 1881 its store was

located at 6th Avenue and 16th Street, Manhattan; from 1881 to 1910 on West 23rd Street; and since 1910 at 5th Avenue and 35th Street. During the period from 1879 to 1910 the store was named "Liliputian Bazaar," and the infants' and children's wear was so advertised and labeled. In 1910, when the store was moved to 5th Avenue and 35th Street, the business was expanded to include merchandise other than infants' and children's wear and the "Liliputian Bazaar" then became, and has ever since remained, a department of the plaintiff, handling only merchandise for infants and children up to and including six years of age. Except where it was impracticable to affix labels, the merchandise sold in this department has always been labeled "Liliputian Bazaar."

In 1929, the plaintiff opened its first branch store at Garden City, Long Island, and on February 24, 1930, it opened its second branch store at Mamaroneck, N. Y. Subsequently, other branches appeared in various cities in different parts of the country, and on August 3, 1942, a branch store was opened in Stamford, Connecticut, on the same street and almost directly opposite the defendant's store. In 1930, the plaintiff had 1,495 charge customers in the Stamford area, and in 1944 it had 8,738 of such customers.

During the entire period that the business has been in existence the "Liliputian Bazaar" has been extensively advertised, and has come to signify in the minds of the buying public Best & Company. In addition, the plaintiff and its predecessors have been sedulous in their efforts to prevent the use by others of the word "Liliputian," and the evidence shows that these efforts have been largely successful. However, in Ball v. Broadway Bazaar, 194 N.Y. 429, 87 N.E. 674, it was held that the words "Liliputian" and "Bazaar" were common descriptive words and could not singly be appropriated, but that together they constituted a valid common law trademark.

"Miller's Liliputian Shoppe" was opened for business by Jacob Miller, the late husband of the defendant, on December 31, 1930, at 175 Bedford Street, Stamford, Connecticut. The store occupies today the same premises that it did in 1930, and the business has always been confined to selling at retail wearing apparel for infants and children up through size 16. The labels used contained the name of the store and its location at "Stamford, Conn." Since 1934, Jerome S. Miller, the elder son of Jacob Miller, has managed the store, except for a period of four years between April 1942 and February 1946, when he was in the Army, and during that period the younger son, Samuel S. Miller, took over the management. Jacob Miller died in 1940, and the present defendant succeeded to his interest, but she has never taken any active part in the business. The store today employs approximately 8 people, and its employee range over the years has been between 3 and 10. Starting in 1931, the gross sales were $10,408.79, and by 1940 they had risen to $46,270.31, and by 1944 to $134,346.44.

All of the defendant's advertising has been of a purely local nature, and has been done by mail, newspaper and radio. In 1941 and 1944, advertisements appeared in the Stamford Advocate on three different dates, in each of which the store was described as "Miller's Lilliputian" without the use of the word "Shoppe."

On November 9, 1945, the defendant had 26 charge customers residing outside of Connecticut, to whom advertising material was sent, and from whom orders were filled by mail; and on September 13, 1944, two comparison shoppers, employed by the plaintiff, separately visited the defendant's store, purchased some children's clothing, paid cash, and, at their request, the defendant mailed the purchases to designated persons at their respective New York addresses.

In 1933, the existence of "Miller's Lilliputian Shoppe," at Stamford, Connecticut, was brought to the attention of the plaintiff, and a representative of the plaintiff thereupon called on Jacob Miller and demanded that he discontinue the use of the words "Lilliputian Shoppe." Again in 1934, this same representative saw Jacob Miller and renewed his demand, which was refused. Nothing further was done by the plaintiff until 1942, when Mr. LeBoutillier, the president of the plaintiff went to Stam-

ford to select a location for a branch store, and in passing through Bedford Street noticed the defendant's place of business. The plaintiff's Stamford branch was opened on August 3, 1942, and on October 9, 1944, another demand was made upon the defendant to discontinue the use of "Lilliputian Shoppe." Negotiations followed, and upon their collapse the present suit was instituted.

■■■ 1. It is unnecessary to decide whether "Liliputian Bazaar" is a proper subject of federal registration, for it is settled that registration does not enlarge the plaintiff's substantive rights, but merely confers jurisdiction on the court and gives certain procedural advantages. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 324, 59 S.Ct. 191, 83 L.Ed. 195; Emerson Electric Mfg. Co. v. Emerson Radio & P. Corp., 2 Cir., 105 F.2d 908, 910; George W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 142 F.2d 536, 541, certiorari denied 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606. Here, the registration furnishes a substantial ground for federal jurisdiction, and the court clearly has incidental or pendent jurisdiction under the doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, to adjudicate the claim of unfair competition. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra; Pure Oil Co. v. Puritan Oil Co., 2 Cir., 127 F.2d 6.

■■■ 2. The question remains whether the defendant is guilty of unfair competition in the use of the words "Miller's Lilliputian Shoppe" in connection with the sale of infants' and children's apparel at the defendant's store at Stamford, Connecticut. This question is purely one of fact, and the test is whether the public is likely to be deceived. Middletown Trust Co. v. Middletown Nat. Bank, 110 Conn. 13, 147 A. 22; Yale & Towne Mfg. Co. v. Rose, 120 Conn. 373, 181 A. 8; George W. Luft Co. v. Zande Cosmetic Co., supra. I have already found that "Liliputian Ba-

zaar" as applied to infants' and children's apparel signifies Best & Company. I do not think though that the use by the defendant of the words "Miller's Lilliputian Shoppe" is likely to deceive; the addition of the words "Miller's" and "Shoppe" to the word "Lilliputian" sufficiently distinguishes the name from "Liliputian Bazaar" so as to remove any likelihood of deception. The record in the case is singularly devoid of a single instance where a purchaser bought merchandise from the defendant believing it to be that of the plaintiff. Indeed, Mr. LeBoutillier, the president of the plaintiff, testified that he was unable to recall a single occasion that he knew or heard of, where anyone confused the plaintiff and the defendant, and I find nothing to a contrary effect in the testimony of the different fact witnesses called by the plaintiff.

I do not think that Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526, and other similar cases cited by the plaintiff have any application. In those cases, it was held that the use of a defendant's name in connection with an infringing mark is "an aggravation and not a justification" of the infringement. Here, there is no infringement because the descriptive word "Liliputian," standing alone, is not the subject of exclusive appropriation, Ball v. Broadway Bazaar, 194 N.Y. 429, 87 N.E. 674, and the defendant has a perfect right to use the word as long as it is used in a setting which does not point to Best & Company. The defendant not only adds the distinguishing word "Shoppe" to "Lilliputian" but also prefixes the word "Miller's," thereby expressly negativing any suggestion of Best & Company.

I find, therefore, that the defendant is not guilty of unfair competition in the use of the words "Miller's Lilliputian Shoppe" in connection with the sale of infants' and children's apparel at the defendant's store at Stamford, Connecticut.

There may be a decree for the defendant dismissing the complaint, with costs.