**BEST & CO., Inc. v. MILLER.**
No. 83, Docket 20758.

Circuit Court of Appeals, Second Circuit.
April 2, 1948.

CLARK, Circuit Judge, dissenting.

Strauss, Reich & Boyer, of New York City (Joseph M. Proskauer and Harold H. Levin, both of New York City, of counsel), for plaintiff-appellant.

Levien, Singer & Neuburger, of New York City (Stuart H. Steinbrink, J. Lincoln Morris and Ralph B. Neuburger, all of New York City, of counsel), for defendant-appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

Best & Co., a New York corporation and owner of the trade-mark "Liliputian Bazaar" registered in 1915 under the Trade-Mark Act of 1905, 33 Stat. 724, 15 U.S.C.A. § 81 et seq., brought suit against Sadie S. Miller, doing business in Stamford, Connecticut, under the name and style of "Miller's Lilliputian Shoppe." Charging both trade-mark infringement and unfair competition, the plaintiff sought an injunction against use by the defendant of the words "Lilliputian Shoppe," an accounting, and treble damages. The defendant answered denying the charges and counterclaiming for cancellation of the plaintiff's registration on the ground that its trade-mark was merely descriptive. Both parties were citizens of New York. Federal jurisdiction of the claim of trade-mark infringement was sustained under 15 U.S.C.A. § 96, with pendent jurisdiction as to the claim of unfair competition. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195. The trial resulted in dismissal of the complaint, from which the plaintiff has appealed, and dismissal of the counterclaim, from which the defendant has appealed.

The facts found by the district judge are set out at length in his opinion, 67 F.Supp. 809. A summary of them follows: Since 1879 the plaintiff and its predecessors have been continuously engaged in the City of New York in selling at retail apparel for infants and children not over six years of age. Up to 1910 its store front carried the name "Liliputian Bazaar" and the goods there sold were so advertised and labeled. In that year the store was moved to Fifth Avenue and 35th Street, and the business was expanded to include apparel and accessories for older children and adult men and women. Thereafter the sale of goods for infants and children under seven was conducted as a department of the plaintiff's business. Except where it was impracticable to do so, the merchandise sold in this department has always been labeled "Liliputian Bazaar." During the entire period that the business has been in existence the "Liliputian Bazaar" has been extensively advertised, and has come to signify in the minds of the buying public Best & Co. In February 1930 the plaintiff opened a branch store in Mamaroneck, New York, which is 13 miles from Stamford, Connecticut. In that year the plaintiff had 1495 charge customers in the Stamford area. In August 1942 it opened a branch store in Stamford on the same street as the defendant's store and almost directly opposite it.

The defendant's store was opened on December 31, 1930, by her husband Jacob Miller, to whose interest she succeeded upon his death in 1940. The store has always borne the name "Miller's Lilliputian Shoppe" and occupied the same premises. From the start the business has been restricted to the retail sale of wearing apparel for infants and children wearing garments no larger than size 16, and the merchandise sold has carried labels bearing the name of the store and its location, "Stamford, Conn." All of the advertising has been of a purely local nature and has described the store as "Miller's Lilliputian Shoppe," except on three occasions when an advertisement in a Stamford newspaper omitted the word "Shoppe." In September 1944, shortly before the present suit was started, two shoppers employed by the plaintiff made cash purchases at the defendant's store and requested the defendant to mail the purchased articles to designated addresses in New York, which was done. On November 9, 1945, the defendant had 26 charge customers residing outside of Connecticut, to whom advertising material was

sent and from whom orders were filled by mail.

The existence of "Miller's Lilliputian Shoppe" at Stamford came to the attention of the plaintiff in 1933 and a demand was made upon Jacob Miller that he discontinue the use of the words "Lilliputian Shoppe." This demand was renewed in 1934 and again in October 1944. Negotiations followed, and upon their collapse the present suit was commenced on November 8, 1944.

■ Since registration of a trade-mark confers only procedural advantages and does not enlarge the registrant's substantive rights,[1] the trial judge held it unnecessary to pass upon the validity of the plaintiff's trade-mark and turned at once to a consideration of the claim of unfair competition. He found that the record was barren of a single instance of a purchaser buying the defendant's merchandise in the belief that it was the plaintiff's and that the plaintiff's president could not recall any one having confused the two; he found also that there was no likelihood that the public would be deceived by the defendant's use of the trade name "Miller's Lilliputian Shoppe"; consequently despite the finding that "Lilliputian Bazaar" had acquired a secondary meaning signifying Best & Co., he held that the defendant was not engaging in unfair competition.

■ Much of the argument on the appeal has concerned itself with the validity of the plaintiff's trade-mark, the defendant contending that "Liliputian Bazaar" is equivalent to "Children's Department" or "Children's Store" and merely descriptive of the business in which both parties are engaged, while the plaintiff argues that the word "Liliputian" as applied to the sale of goods is fanciful and suggestive rather than purely descriptive.[2] We agree with the district court that it is unnecessary to decide whether the trade-mark is a proper subject of registration under the federal Trade-Mark Act of 1905, § 5, 15 U.S.C.A. § 85. Assuming it is, the plaintiff is entitled to no relief unless there has been infringement. What degree of resemblance is necessary to constitute an infringement is incapable of exact definition; courts can say no more than that "no trader can adopt a trade-mark so resembling that of another trader as that ordinary purchasers, buying with ordinary caution, are likely to be misled." McLean v. Fleming, 96 U.S. 245, 251, 24 L.Ed. 828. Hence the test of trademark infringement differs little, if any, from the test of unfair competition.[3]

■ By her counterclaim the defendant asks for cancellation of the plaintiff's registration on the ground that the mark is merely descriptive. Under the Trade-Mark Act of 1905, § 22, 15 U.S.C.A. § 102, the defendant has no standing to obtain such relief since she has no interfering registered trade-mark. Drittel v. Friedman, 2 Cir., 154 F.2d 653, 654. If the court were to apply the Trade-Mark Act of 1946, effective July 5, 1947, to the appeal, section 47(b), 15 U.S.C.A. § 1051 note, although neither party

[1] Armstrong Co. v. Nu-Enamel Corporation, 305 U.S. 315, 324, 59 S.Ct. 191, 83 L.Ed. 195; Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Co., 2 Cir., 105 F.2d 908, 910, certiorari denied 308 U.S. 616, 60 S.Ct. 262, 84 L. Ed. 515; George W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 142 F.2d 536, 541, cert. denied 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606.

[2] In Ball v. Broadway Bazaar, 194 N. Y. 429, 436, 87 N.E. 674, 676, which was a suit brought by a predecessor of the present plaintiff, the court said: "The word 'Lilliputian' is derived from Swift's Travels of Lemuel Gulliver to the imaginary Kingdom of Lilliput, the inhabitants of which were described as pygmies about six inches in height. Although of purely fanciful origin, the word 'Lilliputian' has become a part of the English language, and is used to denote persons, and possibly things, of diminutive or minute size. The word 'Bazaar' is also part of our common speech. * * * It is obvious that neither of these words alone can be the subject of a trade-name in which any one can acquire an exclusive proprietary right. They are purely descriptive parts of our language, and may be used by all. But their use together, or in combination with some other word, such as 'Best,' for instance, marks the difference between what is permissible and what may be forbidden."

[3] Armstrong Co. v. Nu-Enamel, 305 U. S. 315, 325, 59 S.Ct. 191, 83 L.Ed. 195; American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317; Nims, Law of Unfair Competition and Trade Marks (4th Ed.1947) 10, 1017.

has suggested that we should do so, it may be that section 37, 15 U.S.C.A. § 1119, gives her standing to demand the cancellation; but even on that assumption we could not decide the counterclaim in her favor on this record. Section 46(b), 15 U.S.C.A. § 1051 note, saves "marks, registered under the 'ten-year proviso' of section 5 of the Act of February 20, 1905, as amended." Under this proviso, 15 U.S.C.A. § 85, it seems likely that the plaintiff's mark, which has been in continuous use since 1879, was properly registered, even if it were considered merely descriptive. Thaddeus Davids Co. v. Davids, 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046. This issue apparently was not litigated at the trial and has not been argued here. If the 1946 Act were held applicable, a remand to the district court would be necessary; but in the opinion of the court the provisions of the 1946 Act are not "applicable to the subject matter" of the defendant's appeal from dismissal of her counterclaim.

The essence of the wrong of unfair competition lies in the sale of the goods of one manufacturer or vendor for those of another or under such conditions as may lead the purchaser to think they are the goods of the other.[4] If the defendant selects a trade-mark or trade name similar to the plaintiff's with intent to palm off his wares as those of the plaintiff, proof of his intent may be strong evidence of, and in proper circumstances establish, the likelihood of confusion. In the case at bar there is no finding that the defendant's trade name was chosen with any such intent; nor is there any evidence to justify such a finding. On the other hand, a defendant's good faith in believing that he has so marked his goods as to distinguish them from the plaintiff's, will not protect him if the court finds that confusion has resulted, or is likely to result. The trial judge correctly ruled that unfair competition is a question of fact, and the test is "whether the public is likely to be deceived."[5] Applying this test he found no unfair competition. Such a finding is not conclusive on an appellate court, if it takes a different view as to the likelihood of deception.[6] A majority of the court agrees with the trial court's finding of no unfair competition. It is true that "Miller's Lilliputian Shoppe" makes use of the dominant word in the plaintiff's mark and substitutes a synonym for "Bazaar," but it also contains the surname "Miller's," and no one word of the three is emphasized more than another. While not conclusive, it is not without significance in determining the likelihood of deception of the public by the use of the defendant's trade name, that no actual confusion has ever resulted during the many years since the business was started at the end of 1930.[7] Furthermore, the secondary meaning which "Liliputian Bazaar" has acquired signifies Best & Co. so that goods bearing that label are identified as coming from its store rather than from an anonymous source or from a dealer whose name the customer may have forgotten. Cases such as Barton v. Rex-Oil Co., 3 Cir., 29 F.2d 474, where the secondary meaning denotes a product, are therefore distinguishable. With the competing stores located on opposite sides of the same street, only about 100 feet apart, and each bearing the owner's name, the likelihood that customers will be deceived into buying the defendant's wares in the belief they are the plaintiff's seems to us nil.

The plaintiff contends that Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526, compels a contrary conclusion. There the trade-mark "La Favorita," followed by the name Holt & Co., used as a brand name of flour was held infringed by the defendant's use of the same brand followed by the name S. O. Ryder, on its flour, the court saying that the substitution of the name Ryder for Holt "is an aggravation and not a justification, for it is openly trading in the name of another upon the reputation acquired

---

[4] Fawcett Publications, Inc. v. Popular Mechanics Co., 3 Cir., 80 F.2d 194, 198.

[5] General Finance Loan Co. v. General Loan Co., 8 Cir., 163 F.2d 709, 712; Eastern Wine Corporation v. Winslow-Warren, Ltd., 2 Cir., 137 F.2d 955, 960; certiorari denied 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452.

[6] LaTouraine Coffee Co., Inc. v. Lorraine Coffee Co., Inc., 2 Cir., 157 F.2d 115, 117; certiorari denied 329 U.S. 771, 67 S.Ct. 189.

[7] Lucien Lelong, Inc. v. Lander Co., Inc., 2 Cir., 164 F.2d 395, 397.

by the device of the true proprietor." But it should be observed that there the trade-mark identified a product and that the court found an intent to infringe. Moreover, we do not understand the case to mean that under no circumstances will the use of the defendant's name be sufficient to prevent deception of the public. For reasons already stated we think there is no likelihood of deception in the case at bar and accordingly affirm the judgment.

CLARK, Circuit Judge (dissenting).

Judge Swan's arguments for affirmance are persuasively stated, and I should feel that I ought to shroud my doubts in silence but for one circumstance not appraised in his opinion. That is the effect of the new Lanham Trade-Mark Act upon the plaintiff's case. Though only recently effective, we are certainly authorized to apply it at least prospectively, by its explicit terms. § 47(b), 15 U.S.C.A. § 1051 note. Since the plaintiff asks for reversal only to secure an injunction and prevent future infringement, I think we should review the situation in the light of this Act. It cannot be uniquely helpful to the defendant here (in its general broadening of remedies); on the contrary, it is clearly plaintiffs' legislation, beyond what is, I believe, yet judicially realized, even if not quite so much so as the already voluminous literature assumes. Thus it broadens the area of registrable trade-marks, the protection accorded such marks, and the general remedies for false description or representation of goods. §§ 2, 32(1), 43(a), 15 U.S.C.A. §§ 1052, 1114(1), 1125(a);[1] cf. LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115, 118, 119, certiorari denied 329 U.S. 771, 67 S.Ct. 189; California Apparel Creators v. Wieder of California, Inc., 2 Cir., 162 F.2d 893, 900, 901, certiorari denied 332 U.S. 816, 68 S.Ct. 156. And it is a more recent and immediately direct expression of legislative

concern for this species of property than we have had as to patents, to which analogy is sometimes asserted. Moreover, it seems obvious that in the case of a trade name there is nothing like the same opportunity for burdensome monopoly and restriction on scientific advances which experience has shown to exist in the grant of a patent. The resources of the English language are such that a defendant may be required without undue hardship to choose his own formula or slogan to exploit without riding upon the successful advertising of another. Hence, however allergic we may be personally to the flamboyance of American advertising, I can see no escape from our duty to carry out the legislative intent.

The approach to this case, in my view, should be to regard it, as stated in Gannert v. Rupert, 2 Cir., 127 F. 962, 963, as "a trade-mark case pure and simple," and "not a case of unfair competition," so that "with this distinction in mind it is obvious that many of the propositions argued by the defendant are irrelevant." Of course, once secondary meaning and unfair competition are proven in a case, the net results are in substance the same as upon proof of infringement of a valid trade-mark. But in the latter case the road is somewhat more direct; plaintiff need show only the defendant's confusing use, without proof of damage or other unfairness than the use, and our duty to review is clear. Soy Food Mills v. Pillsbury Mills, 7 Cir., 161 F.2d 22, certiorari denied 332 U.S. 766, 68 S.Ct. 73; LaTouraine Coffee Co. v. Lorraine Coffee Co., supra; cf. Magazine Publishers v. Ziff-Davis Pub. Co., 2 Cir., 147 F.2d 182, 185. I do not believe there can be doubt that this ancient trade name, originated by plaintiff's predecessor in 1879, was a valid trade-mark when registered in 1915 or renewed in 1935. Its dominating adjective is a fanciful word, originally from the mind of Jonathan Swift,

---

[1] Thus the trade-mark is to be registered unless it is "merely descriptive or deceptively misdescriptive" of the applicant's goods, and even then when it "has become distinctive of the applicant's goods in commerce," five years' "substantially exclusive and continuous use" being acceptable prima facie evidence. § 2(e, f). Use in commerce of a "colorable imitation" which "is likely to cause confusion or mistake" constitutes infringement. § 32(1). The remedy for false description or representation is extended to any person who "believes" that he "is likely to be damaged" thereby. § 43 (a). And federal jurisdiction is extended even to the latter case. § 39, 15 U.S. C.A. § 1121.

but given a new fanciful twist by plaintiff,[2] who also added to it a noun with exotic connotations to form a combination suggesting an original place and method of vending children's clothes. And we are interested only in the combination (not in the use of the separate words); for that was the registered trade-mark, as well as the trade name. It was afforded protection in Ball v. Broadway Bazaar, 194 N.Y. 429, 87 N.E. 674, and Ball v. Best, C.C.N.D.Ill., 135 F. 434. Such registration I think valid even without resort to the new law, § 46(b), or to the "ten-year proviso" of the old law or its modern five-year substitute. § 2(f).[3]

Of course we still must determine whether or not defendant's use is likely to cause confusion or mistake. I do not know by how much the new Act must be considered to have extended protection to trade-marks generally; I think, however, that this trade-mark should have been accorded protection here even under the old law. Defendant has appropriated its dominant and eye-catching part, Queen Mfg. Co. v. Isaac Ginsberg & Bros., 8 Cir., 25 F.2d 284; Huntington Laboratories v. Onyx Oil & Chemical Co., Cust. & Pat.App., 165 F.2d 454, and for the rest has substituted a synonym arrestingly fashioned. One could hardly imagine an expression better formulated to express the same thing slightly differently, but with like force. The addition of the defendant's surname thus possessively then does seem "an aggravation, and not a justification," as pointed out in Menendez v. Holt, 128 U. S. 514, 521, 9 S.Ct. 143, 144, 32 L.Ed. 526. Important, too, is the fact that the competition is in exactly the same business; obviously there would not be a like threat from, say, a Lilliputian dancing academy or even candy emporium. Threatened with a like danger as to each of its fifteen branch stores from Massachusetts to Illinois, plaintiff's business could be indeed menaced. And not without justification, it seems, does it express fear of direct competition right in New York City from "Macy's Liliputian Shop, Saks' Liliputian Shoppe, Lord & Taylor's Liliputian Department, Franklin Simon's Liliputian Store."

As it is the likelihood of deception or confusion which is involved, evidence of specific instances is not necessary to support a holding of trade-mark infringement. La-Touraine Coffee Co. v. Lorraine Coffee Co., supra, and cases cited. But since some point is made of a lack of evidence for plaintiff, I deem it proper to say that the evidence produced seemed to me pertinent and convincing. That plaintiff's customers frequently addressed its "Liliputian Bazaar" as "Liliputian Shop," "Liliputian Bar," "Liliputian Center," and "Liliputian Department" helps to demonstrate the key word of the trade-mark. Plaintiff's canvass of housewives to show that persons seeing garments with defendant's label immediately assumed that they were garments from Best & Co. is direct evidence of confusion. Beyond this, to expect testimony from persons who had actually made purchases from defendant under the belief that she was the plaintiff is to journey out of the field of business realities. What customer of children's wear is likely to get into a dispute between merchants as to their sales unless she is acutely dissatisfied with, or in some other way disgruntled over, her purchase? How is such a dissatisfied customer to be located by the rival concern, and what unique value would such testimony have? Further, I take it that this reasoning is opposed to the psychology of advertising which is designed particularly to attract attention to specific goods, so that they may sell themselves. If defendant's labels bring the customer to the counter or even to the doorstep, retreat is difficult and a sale is in prospect, even though that may ultimately be consummated with full knowledge of the vendor's identity. Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 86 L.Ed. 1381.

I think, therefore, that defendant should be required to look elsewhere for her slogan. Analogies in the cases are many; I cite some examples from both the fields of trade-mark infringement and unfair competition: Queen Mfg. Co. v. Isaac Ginsberg & Bros., supra ("Queen Brand" infringed "Queen

---

[2] That plaintiff substituted one "l" for the two l's of the original adds perhaps a little.

[3] See note 1 supra; cf. San Francisco Ass'n for the Blind v. Industrial Aid for the Blind, 8 Cir., 152 F.2d 532, and cases cited.

Make"); Fashion Park v. The Fair, Cust. & Pat.App., 49 F.2d 830 ("Fashion Row" and "Fashion Park"); Florence Mfg. Co. v. J. C. Dowd & Co., 2 Cir., 178 F. 73 ("Sta-Kleen" and "Keepclean"); Photoplay Pub. Co. v. LaVerne Pub. Co., 3 Cir., 269 F. 730 ("Photo-Play Journal" and "Photoplay Magazine"); Gannert v. Rupert, supra ("Home Comfort" and "Comfort" magazine); General Finance Loan Co. v. General Loan Co., 8 Cir., 163 F.2d 709, certiorari denied 332 U.S. 851, 68 S.Ct. 356 ("General Finance" and "General Loan"); Hygienic Products Co. v. Huntington Laboratories, Cust. & Pat.App., 139 F.2d 508 ("Toilet-San" and "Sani-Flush"); Hanson v. Triangle Publications, 8 Cir., 163 F.2d 74, certiorari denied 332 U.S. 855, 68 S.Ct. 387 ("Seventeen for the Junior Teens" dresses and "Seventeen" magazine).