35 C.C.P.A.(Patents)

## HUNTINGTON LABORATORIES, Inc. v. ONYX OIL & CHEMICAL CO.

### Patent Appeals No. 5369.

Court of Customs and Patent Appeals.

Jan. 6, 1948.

Ralph G. Lockwood, of Indianapolis, Ind., Dwight B. Galt, of Washington, D. C., and Elmer L. Goldsmith, of Indianapolis, Ind., for appellant.

Kenneth H. Murray, Murray & Parker and Albert M. Parker, all of New York City, for appellee.

Before GARRETT, P. J., and BLAND, HATFIELD, JACKSON, and O'CONNELL, JJ.

GARRETT, Presiding Judge.

This is an appeal from the decision rendered by the First Assistant Commissioner of Patents, the late Honorable Leslie M. Frazer, affirming the decision of the Examiner of Interferences in a trade-mark registration opposition proceeding. Huntington Laboratories, Inc., v. Onyx Oil and Chemical Co., 69 U.S.P.Q. 440.

On January 4, 1944, appellee filed its application for registration under the Trade-Mark Registration Act of February 20, 1905, 15 U.S.C.A. § 81 et seq., of the word "Onyxsan" for use as a trade-mark for "a

quaternary ammonium antiseptic compound for pharmaceutical purposes." The application alleged continuous use "since March 1938," and was verified by oath of the president of the company.

On April 12, 1944, appellant filed notice of opposition, the notice being in conventional form and embracing the customary allegation respecting appellant's belief that it would be damaged by the registration sought by appellee, and, as stated by the assistant commissioner, relied "upon one registered mark and three that are unregistered. The registered mark is 'Derma-San' for 'disinfectant'. The unregistered marks are 'Deo-San,' applied to an 'oderless defactor;' 'Minto-San,' applied to a 'mint formaldehyde spray;' and 'Cabinet-San,' applied to a 'bedside cabinet deodorant'." The Derma-San mark was registered September 13, 1932, upon an application filed May 16, 1932. Use of the mark was alleged "since January 2, 1932." "Deo-San" is alleged to have been used "since 1938"; "Minto-San * * * since 1930"; and "Cabinet-San * * * since 1936."

Neither party took depositions, but both introduced stipulated evidence. In that on behalf of appellant there is included a list of 29 hyphenated marks stated to have been used by it on different of its products. In 26 of these "San" constitutes the suffix; in one the prefix; and 2 have the prefix "Sana." Ten of those having the suffix "San" are stated to have been registered. Those hereinbefore named relied upon by appellant are included in the list.

In the brief before us appellant devotes considerable space to two allegations which were not referred to in either the decision of the Examiner of Interferences or that of the First Assistant Commissioner, and only one of them is mentioned in the reasons of appeal to us.

The allegation not covered by the reasons of appeal is to the effect that appellee's use of Onyxsan was not established by the stipulated statement of facts introduced for appellee, nor otherwise than by the allegation of use as stated in appellee's application. Since there is no allegation of error on this point, it is not incumbent upon us to consider it simply upon the brief, but it is not amiss to say that the statement in the oath accompanying appellee's application as to use "since March 1938" was not challenged in appellant's notice of opposition, and, so far as the record here shows, nothing occurred which made it incumbent upon appellee to furnish any further evidence of use than was furnished in the oath to the application.

The second allegation which was not discussed by either of the tribunals of the Patent Office is that the term "San" has acquired a secondary meaning. The failure of the Examiner of Interferences to find this was assigned as error in the appeal to the commissioner, but, as has been indicated, the First Assistant Commissioner did not discuss it nor pass upon it. In the first of the reasons of appeal to us it is alleged: "The Commissioner erred in not holding that, as to the particular goods, opposer's extensive use of the suffix San for many years in association with *prefixes descriptive of the goods,* has established in San a secondary meaning wherein it constitutes the predominant part of opposer's trademarks as opposer's family name denoting source of origin, * * *." (Italics supplied.)

We note that the allegation of error by the Examiner of Interferences did not embrace any statement that appellant's prefixes used with "San" are "descriptive of the goods," such as is embraced in the reasons of appeal to us. Other than as there suggested, there is nothing in the record to indicate that appellant's prefixes have been regarded as being other than suggestive.

It will be noted that the allegation in the reason of appeal quoted, to the effect that appellant's use of the syllable "San" has established a secondary meaning for it, is coupled with the clause reading "wherein it constitutes the predominant part of opposer's trademarks * * *."

It is not altogether clear to us whether it was the intention of counsel for appellant to express the view that in order to be held the dominant part of appellant's mark "San" must be held to have acquired a secondary meaning. The brief is not as definite upon that point as could be wished, but upon the whole we think it was probably not so intended. However, lest we may have misunderstood counsel's

argument in this regard, we may say that we do not think a secondary meaning for "San" has been established by appellant's use of it, or otherwise. There was included in the stipulated evidence on behalf of appellee a list of 45 marks (taken from the records of the Patent Office) registered to others than appellant consisting of words having the suffix "San," several of these being hyphenated. A number of them bear registration dates prior to the first use of "San" shown by appellant, and others indicate concurrent use. The products for which they were registered are not named on the list, but the prefixes of many of them suggest goods of the same general class as the products of appellant. The registrations were not introduced for the purpose of questioning the validity or scope of appellant's registration, but for the sole purpose of showing that appellant had not established a secondary meaning for the term, and we think they properly may be looked to upon that point, although they could not be considered on the question of validity.

█. Aside from this, we think it would not be a matter of any consequence upon the question of what constitutes the dominant part of appellant's mark if it were established that "San" has a secondary meaning as applied to appellant's goods. A word or syllable may constitute the dominant part of a trade-mark without having acquired a secondary meaning and a word or syllable which has acquired a secondary meaning does not thereby necessarily become the dominant part of a mark.

So far as we know, the notation "San" has never been regarded as a descriptive term. Evidently it bears some relation to the word "Sanitary" and like words. As such, it is admittedly suggestive when applied to appellant's products, and it may be said that, so far as we are advised, it has never been deemed necessary in order to establish the validity of a suggestive mark to show that it had a secondary meaning. Indeed, an effort to show that a word has acquired a secondary meaning carries with it an implication that such a word is regarded by its proponent as being either descriptive or geographic or as having some quality which would normally preclude its registration as a trade-mark.

The brief on behalf of appellant asserts: "The Commissioner and Court have heretofore held that San ["a" and "n" printed with small capitals in text] comprises the predominant part of said trademarks, indicating the source of origin." It is pointed out that the Assistant Commissioner in the case of Huntington Laboratories, Inc. v. Mathieson Alkali Works, 517 O.G. 823, 46 U.S.P.Q. 388, held that "Aqua-San" and "Lustra-San" were likely to be confused with appellant's marks "Liqua-San," "Auto-San," and "Derma-San." It will be noted that the latter is one of the marks which appellant pleads in its notice of opposition here. The Assistant Commissioner there indicated a belief that "San" predominated.

In his decision in the instant case the Assistant Commissioner referred to his decision in the case so cited and stated his reasons for differentiating the two, saying: "But the present applicant's mark, 'Onyx-san,' is not hyphenated; nor is it in any sense suggestive of applicant's goods. It differs in appearance from each of opposer's marks, and when considered as a whole does not resemble either of them in sound or significance. Cf. Syncromatic Air Conditioning Corporation v. Williams Oil-O-Matic Heating Corporation, 109 F.2d 784, 27 C.C.P.A., Patents, 1010."

In this case he expressed no view as to "San" predominating.

Appellant also cites the case of The Hygienic Products Co. v. Huntington Laboratories, Inc., 54 U.S.P.Q. 111, wherein Assistant Commissioner of Patents Van Arsdale affirmed the decision of the Examiner of Interferences holding the notation "Sana-Porce" (mark of the Huntington Laboratories, Inc.) for a porcelain cleaner in powder form used on porcelain coated sinks, wash basins, and the like, to be unregistrable over the Hygienic Products Company's mark "Sani-Flush," used upon a cleanser for the same kind of articles. No question as to descriptiveness of the respective marks taken as a whole, or of any portion of them, was there raised, nor was there any finding as to what was regarded as the dominant part of the mark. It was simply held that, notwithstanding the difference in the prefixes, the suffixes "Sana" and "Sani" were so similar that their concurrent

'use upon goods of the same descriptive properties would be likely to result in confusion.

Another case (seemingly a proceeding to cancel) referred to in appellant's brief, styled Huntington Laboratories, Inc. (appellant in the instant case) v. Hillyard Chemical Company, apparently involved "Velva-San" and appellant's registered mark "Liqua-San." The brief states that "Velva-San" was cancelled. There is, however, no citation of any publication in which the decision may be found. We assume that it was a manuscript decision of some tribunal of the Patent Office which has not been printed. There is nothing said of it in the brief which indicates that it would be helpful in the decision of the instant case.

The decision most emphasized by appellant before us is that of this court in the case of Hygienic Products Co. v. Huntington Laboratories, Inc. (appellant here and hereinafter so referred to), 139 F.2d 508, 31 C.C.P.A., Patents, 773.

There appellant made application for registration of the notation "Toilet-San" as a trade-mark for a preparation designed for use as a cleansing powder for water-closet bowls and the like, the prefix "Toilet" being disclaimed in the application. Hygienic Products Company opposed the registration, alleging ownership of the registered trade-mark "Sani-Flush" for goods of the same descriptive properties. The Examiner of Interferences dismissed the notice of opposition and the commissioner (speaking through Assistant Commissioner Van Arsdale) affirmed his decision. Hygienic Products Co. v. Huntington Laboratories, Inc., 54 U.S.P.Q. 112. Upon appeal we reversed the commissioner's decision (a comprehensive opinion being written by Lenroot, J., and Bland, J., dissenting) and denied the registration sought.

Nothing was there said as to appellant's suffix, "San," having acquired a secondary meaning, but it was held to be the dominant portion of the particular mark of appellant —"Toilet-San"—there involved. A careful study of our decision in that case will, we think, convince the reader that our holding as to the dominance of the suffix, grew out of the fact that the prefix "Toilet" was admittedly descriptive with respect to the goods there involved. In that particular instance, as is asserted in substance in the brief for appellee, the suffix actually was the only registrable portion of the mark.

Of course, there was no holding in that case to the effect that "San" constituted the dominant part of any mark of appellant other than the one there involved, and we do not regard that case as being controlling in the instant case.

For the purpose of this case we may disregard the three unregistered marks specified in appellant's notice of opposition and compare only "Derma-San" with appellee's mark "Onyxsan."

Derma is a word found in the lexicographies, the meaning of which, according to Webster's New International Dictionary, is "The sensitive layer of the skin beneath the epidermis." "San" relates to "sanitary" which is defined by the same authority: "* * * Of or pertaining to health; designed to secure or preserve health * * *." So, "Derma-San" applied to a disinfectant implies or suggests that the preparation is suitable for use in preserving or restoring the health of the skin. The definitions given by other lexicographers examined are the same in purport and need not be quoted.

The term "Onyx," comprising the first two syllables of appellee's mark is apparently purely arbitrary as applied to appellee's product. Funk & Wagnalls Standard Dictionary defines it as a particular variety of quartz consisting of layers of different colors, etc. Webster's New International Dictionary gives as definitions "a claw, finger nail, a veined gem * * *." It also gives: "3. Med. A collection of pus in the anterior chamber of the eye, resembling a finger nail." There is nothing in the record which indicates that appellee's quaternary ammonium antiseptic compound is used in the treatment of such eye infection. The stipulated evidence on appellee's behalf shows that appellee has used quite a number of trade-marks embracing "onyx," in some as a prefix and in others as a suffix, presumably for a variety of products.

We take it that the suffix "san" has the same meaning in the marks of both parties. So, in appellee's case it suggests that the preparation on which Onyxsan is used is sanitary—that is suitable for use in preserving or restoring health.

It is obvious that except for the suffix there is not the remotest resemblance between the marks here placed in issue. Furthermore, both the prefix and the suffix of appellant's pleaded marks are suggestive (indeed in the case of "Derma-San" it might be argued that the prefix is decriptive) while the prefix of appellee's mark is arbitrary and apparently without suggestiveness as to the goods upon which it is used. It would be difficult to find marks, the prefixes of which differ more widely in appearance, pronunciation, spelling, and meaning than those of appellant and that of appellee.

We are convinced that there is no likelihood of confusion growing out of the concurrent use of the contesting marks, nor do we think appellant has acquired rights in the suffix "San" which places him in position to prevent its use by others with suffixes which do not render the mark as a whole confusing.

The decision appealed from is affirmed.

Affirmed.

BLAND, Judge, sat during the argument of this case, but resigned before the opinion was prepared.