**WATKINS PRODUCTS, INC.,** formerly known as **The J. R. Watkins Company,** Plaintiff-Appellee,

v.

**SUNWAY FRUIT PRODUCTS, INC.,** Defendant-Appellant.

No. 13736.

United States Court of Appeals Seventh Circuit.

Dec. 14, 1962.

Rehearing Denied Feb. 4, 1963.

DUFFY, Circuit Judge.

Plaintiff's complaint herein asked the District Court to reverse the Trademark Trial and Appeal Board of the Patent Office, which canceled a trademark registration of plaintiff on the Supplemental Register. Defendant filed a counterclaim charging plaintiff, among other things, with trademark infringement and unfair competition. The District Court reversed the decision of the Patent Office Trademark Trial and Appeal Board, ordered plaintiff's registration restored to the Supplemental Register, and dismissed the counterclaim.

Defendant is a small family-owned corporation. Its predecessor, doing business as Sunway Fruit Products, in July 1944, adopted and began using the trademark FRESHIE for a beverage base for various flavored soft drinks. On December 31, 1946, defendant acquired all rights to the trademark FRESHIE, and the appurtenant good will. Defendant and its predecessor have made continuous use of FRESHIE for its beverage base throughout the United States and Canada. The sale of FRESHIE beverage base represented 95% of the defendant's business.

The greater part of defendant's sales of its FRESHIE beverage base is by means of house-to-house sales. It is also sold as a premium product for special promotion programs. Commensurate with its comparatively small size, defendant has spent substantial sums in advertising and promoting its FRESHIE beverage base. Defendant has conducted some radio and newspaper advertising, including radio advertising in Minnesota where plaintiff's principal place of business was located at the time that plaintiff selected its trademark FRESH-AID for its beverage base product.

Plaintiff is a Minnesota corporation. It engages in the manufacture and sale of a variety of products for home and personal use. The bulk of plaintiff's sales is through house-to-house route sales.

For many years prior to 1957, plaintiff marketed a beverage base under its "Wat-

W. Thomas Hofstetter, Robert M. Newbury, Chicago, Ill. (Woodson, Pattishall & Garner, Chicago, Ill., of counsel), for defendant-appellant.

Theodore W. Miller, Chicago, Ill., for appellee.

Before DUFFY, CASTLE and SWYGERT, Circuit Judges.

kins" name. In 1957, plaintiff decided to adopt a new name for its beverage base. Plaintiff selected the marks FRESH-AID and FRESH-ADE. It did so in spite of the fact a trademark search report disclosed defendant's prior registration of the trademark FRESHIE. The front label on plaintiff's product, in addition to the trademark FRESH-AID, shows the name Watkins in substantially smaller letters and a different script. The back label bears only the trademark FRESH-AID underneath which appears the list of ingredients and directions, being twenty-one lines of printed matter. At the extreme bottom in very small type appears "Watkins Products, Inc." and four of its business addresses.

Plaintiff's sale of its FRESH-AID base constitutes about 4% of its business. This is double the volume of sales prior to its use of the trademark FRESH-AID.

On December 9, 1957, plaintiff applied to register FRESH-AID and FRESH-ADE as trademarks in the United States Patent Office. Registration upon the Principal Register was refused, but on January 20, 1959 and on February 3, 1959, plaintiff succeeded in registering its marks on the Supplemental Register.

When defendant learned from the Official Gazette of the Patent Office of the publication of the trademarks FRESH-AID and FRESH-ADE, it notified plaintiff that it objected to plaintiff's use of these marks and demanded that plaintiff cease such use. Plaintiff refused. On April 13, 1959, defendant filed its petition to cancel plaintiff's registrations. In the cancellation proceeding, both plaintiff and defendant offered testimony.

On October 12, 1960, the Trademark Trial and Appeal Board unanimously held that the concurrent use of plaintiff's FRESH-AID or FRESH-ADE and defendant's trademark FRESHIE is likely to cause purchaser confusion. The Board ordered that plaintiff's registrations of FRESH-AID and FRESH-ADE be canceled (127 U.S.P.Q. 171).

The Board stated, p. 172: "It is apparent that the goods of the parties here involved are both essentially imitation beverage bases for making soft drinks and are of such a nature that if marketed under the same or similar marks they might readily be assumed to emanate from a single source. While respondent's 'FRESH-AID' and 'FRESH-ADE' may differ slightly from petitioner's 'FRESHIE' in the suffix portions thereof, the marks are otherwise quite close in sound, appearance, and suggestive connotation, and hence, purchaser confusion would be quite likely to occur."

It should be kept in mind that the instant case did not arise in the District Court. This was a Patent Office cancellation proceeding. The role of the District Court is different in this kind of proceeding than in a case where a suit involving the validity of a trademark is originally commenced in the District Court.

The case of Esso Standard Oil Company v. Sun Oil Company, 97 U.S. App.D.C. 154, 229 F.2d 37, points out the distinction. That suit arose in a Patent Office proceeding in which the registration of the trademark SUNVIS for lubricating oils was opposed. The Patent Office held the concurrent use of the two marks being considered were likely to cause confusion and registration was refused. The applicant brought suit in the District Court to review the Patent Office decision. The District Court there, as here, disagreed with the Patent Office and substituted its own findings for the crucial fact of confusing similarity. The Court of Appeals reversed saying, 229 F.2d at page 40: " * * * In patent and trademark cases under Rev.Stat. § 4915 a finding of fact by the Patent Office as to priority of invention or confusing similarity of marks must be accepted as controlling, unless the contrary is established by evidence 'which, in character and amount carries thorough conviction.' Morgan v. Daniels, 1894, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657 (citing additional cases). As we

pointed out in Abbot v. Coe, 1939, 71 App.D.C. 195, 197, 109 F.2d 449, 451, a mere preponderance of the evidence is not sufficient with regard to invention; the Patent Office finding must be accepted if it is 'consistent with the evidence,' the Patent Office being an expert body preeminently qualified to determine questions of this kind."

In Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, the Court, speaking through Judge Learned Hand, said, page 973: "The District Judge took more testimony, and also reached the conclusion that there was likelihood of confusion. As the case came up, he was, and we are, required to accept the findings of the Patent Office on such an issue of fact, unless the evidence to the contrary is altogether convincing * * * for the new evidence was not of a kind to change the result."

We have held the likelihood of confusion is a question of fact. G. D. Searle & Co. v. Chas. Pfizer & Co., Inc., 7 Cir., 231 F.2d 316, 318; Albert Dickinson Co. v. Mellos Peanut Co. of Illinois, 7 Cir., 179 F.2d 265, 269–270.

We have also held a trademark is confusingly similar to a prior trademark if it is similar in sound, appearance, or suggestive connotation. Independent Nail & Packing Co., Inc. v. Stronghold Screw Products, Inc., 7 Cir., 205 F.2d 921, 924; Northam Warren Corporation v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774, 775.

The cases above cited from this Court are also authority for the rule that evidence of actual confusion is not necessary to a finding of likelihood of confusion.

We have stressed on numerous occasions that one entering a field already occupied by another, has a duty to select a trademark that will avoid confusion. Thus, in Northam Warren Corporation v. Universal Cosmetic Co., supra, we said, at page 775: "One entering a field of endeavor already occupied by another should, in the selection of a trade-name

or trade-mark, keep far enough away to avoid all possible confusion."

The District Court held that FRESHIE is descriptive of defendant's beverage base product and, therefore, not entitled to protection. Apparently the Court overlooked the distinction between suggestive and descriptive trademarks. In Independent Nail & Packing Co., Inc. v. Stronghold Screw Products, Inc., 205 F.2d 921, 925, we said: "However, a trademark may consist of a word or words suggestive of the character of the goods or the properties which the owner of the mark wishes the public to attribute to them, such as 'Holeproof', Holeproof Hosiery Co. v. Wallach Bros., C.C., 172 F. 859, and be valid."

Plaintiff relies on such cases as Skinner Mfg. Co. v. Kellogg Sales Co., 8 Cir., 143 F.2d 895; and Kellogg Company v. National Biscuit Company, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73. In the Skinner case, the term "Raisin Bran" was held descriptive of cereal made with raisins and bran. In the National Biscuit Company case, the term "Shredded Wheat" was held descriptive of a cereal made of wheat which had been shredded. We agree with these decisions, but they are not authority for holding FRESHIE to be descriptive of a beverage base any more than they were authority for holding "Stronghold" to be descriptive of a nail.

In order to support its contention that confusion is not likely, plaintiff relies on the holding of the District Court that FRESHIE had not acquired a secondary meaning. This argument ignores the fact that a suggestive mark such as FRESHIE, as opposed to a wholly descriptive mark, is entitled to protection without secondary meaning being proved. As was said in Huntington Laboratories, Inc. v. Onyx Oil & Chemical Co. (1948), 165 F.2d 454, 35 C.C.P.A. 819: " * * * [I]t has never been deemed necessary in order to establish the validity of a suggestive mark to show that it had a secondary meaning."

The judgment of the District Court is reversed and this cause is remanded with instructions to dismiss the complaint and to enjoin plaintiff from its wrongful use of FRESH-AID.

Under the circumstances of this case, an accounting will not be ordered.

Reversed.